FLORENCE ADAMS GRANT *v.* RICHARD L. GRANT

73-88 497 S.W. 2d 255

Opinion delivered July 23, 1973

*Smith, Williams, Friday, Eldredge & Clark,* by: *Robert V. Light,* for appellant.

*Haley, Young, Bogard & Gitchel,* for appellee/cross appellant.

J. FRED JONES, Justice. Florence Adams Grant was awarded a divorce decree upon her complaint against Richard L. Grant. She was awarded the custody of their two minor children two and six years of age and now appeals from that portion of the decree which awarded $100 per week for child support, $250 per month alimony, and failed to award her one-third of the stock the appellee owns in the two corporations by whom he is employed. Mrs. Grant contends that the chancellor's award of alimony and child support is grossly insufficient and against the clear preponderance of the evidence and that, the chancellor erred in refusing to award her one-third interest in defendant's corporate stock as required by Ark. Stat. Ann. § 34-1214 (Repl. 1962).

The appellee Richard L. Grant cross-appeals from that portion of the decree which awarded to the appellant's attorney a fee in the amount of $3,000 and costs in the amount of $332.66 incurred in the prosecution of the action.

Mr. and Mrs. Grant met each other in 1961 when they were students at the University of Alabama and were married in 1963 immediately prior to Mr. Grant's graduation with a degree in business administration and Mrs. Grant's graduation with a degree in education. Following their marriage, Mr. Grant served three and one-half years in the Navy and Mrs. Grant taught school. Following his discharge from the Navy, Mr. Grant became employed by Rock City Packing Company in Georgia and in 1968 the Grants moved to Harrison, Arkansas, where Mr. Grant was manager of a Rock City Packing Company plant. Mr. Grant terminated his employment with Rock City at its Harrison plant and obtained employment with Pace Industries in Harrison. He acquired five per cent of the stock in Pace Industries and Mr. James Franklin Keenan owned the other ninety-five per cent. Upon moving from Harrison to Little Rock in 1970, Mr. Grant went to work for Inco Corporation which was affiliated with Pace Industries. He procured five per cent of the stock in Inco and Mr. Keenan also owned the remaining 95% of the stock in that corporation.

Mr. and Mrs. Grant as well as Mr. Keenan testified at the trial. It is clear from the evidence that Mr. and Mrs. Grant's difficulties multiplied rapidly after Mr. Grant started work for Inco Corporation. The substance of the testimony is that Mr. Grant was paid a salary of $350 per week working for Inco, and was also paid an additional $125 per week as pocket expense money while on company business. It appears that prior to the separation and divorce, Mr. Grant regularly deposited his weekly pay check of $350 in their joint bank account. It also appears that Mrs. Grant regularly drew on this amount for household expenses, while Mr. Grant traveled extensively over the United States and in Europe on a practically unlimited company expense account. The record indicates that Mr. Grant used his expense account rather lavishly in entertaining prospective customers for aluminum die castings, which appear to be the principal product of Inco and Pace. It is apparent from the evidence in the record that Mr. Grant's business contacts were primarily with executives of large corporations having need for Inco's product. The record is replete, however, with evidence, including Mr. Grant's own admissions, that his expense account contacts were not entirely confined to business executives but also included female secretaries, air stewardesses and others with whom his admitted contacts could hardly be classified as company business. Be that as it may, we are concerned here with Mr. Grant's property, his personal income and ability to pay, as well as Mrs. Grant's needs for the support of herself and their two children.

Mr. Grant and Mr. Keenan testified that when Mr. Grant first went to work for Inco nothing was withheld from his salary, but that later Inco was required to withhold income tax and social security which reduced Mr. Grant's actual take home pay to $260 per week, which together with the $125 personal expense money amounted to an income of $385 per week, which on a four week monthly basis would amount to $1,540 per month. Under the chancellor's award, Mrs. Grant is to receive $100 per week for the support of the children and $250 per month in alimony for her own support, making a total of approximately $650 per month. Of course the child support is subject to change with changing conditions. In addition to the money allotment awarded in the decree, the

chancellor decreed that Mr. Grant should pay all medical, hospital, dental and related expenses reasonably incurred for the care of the children. We are unable to say that the chancellor's award of alimony and child support is grossly insufficient and against the preponderance of the evidence in this case, and we are unable to say the chancellor abused his discretion in making the award.

As to appellant's second point, Mr. Grant testified that he paid $10,000 for his five per cent interest in the stock of Pace Industries. He said he borrowed the money from Mr. Keenan and still owes $7,600 on the transaction. This testimony is not contradicted but is confirmed by Mr. Keenan and Mr. Bob Gaddy, certified public accountant who handles accounts for Inco Corporation and Pace Industries. Mr. Gaddy testified that the book value of Mr. Grant's five per cent equity interest in Inco is $448.75 and that the book value of his five per cent equity interest in Pace Industries is $8,098.75.

It is apparent from the record that Mr. and Mrs. Grant sold their equity in their home in Harrison and that there is still a balance of $2,500 owed to them on this property. The chancellor awarded one-half of this amount to Mrs. Grant and one-half to Mr. Grant. The evidence also indicates that following their separation Mrs. Grant purchased a home in Florida near her parents and that Mr. Grant paid approximately $2,000 in moving Mrs. Grant and the children from Little Rock to Florida.

It appears that Mr. Grant purchased a 1971 Porsche automobile and took title in his name but that the automobile was actually paid for by Inco and belongs to the corporation. Mrs. Grant was awarded the household furniture and a 1968 Oldsmobile automobile. According to accountant Gaddy's testimony, Mr. Grant owes Inco the sum of $6,530.92 for borrowed money and owes to Pace the sum of $4,900. According to Mr. Grant's testimony, they sold their home in Little Rock following their separation and Mr. Grant gave Mrs. Grant the proceeds of the sale of their equity in the sum of $2,500 with which to make the downpayment on the home she purchased in Florida, and also gave her an additional $2,900 for the 20% downpayment on the home in Florida.

We conclude, therefore, from the evidence before us, that the chancellor did not err in refusing to award Mrs. Grant one-third of Mr. Grant's five per cent of the common stock in Inco and. Pace because it is apparent that Mr. Grant's interest in the Oldsmobile automobile, the household furniture and the proceeds from the sale of the Little Rock property, together with the cash he paid to Mrs. Grant in connection with her purchase of a home in Florida, exceeded one-third of the value of his net interest in these closely held corporations, so we conclude that the chancellor's decree should be affirmed.

As to the cross-appeal, it would appear that the $3,000 attorney's fee is a substantial fee for what turned out to be an ordinary divorce case, but it is noted that a detective agency was employed for the sum of $665 for the purpose, as Mrs. Grant put it: "To find out what Mr. Grant's activities of a poor nature consist of." According to Mr. Grant's own testimony and that of his witness Mr. Keenan, most of Mr. Grant's business contacts were with busy executives and corporate presidents in this country and Europe, and according to the appellant he "went first class." It is also apparent that the appellant's social and nonbusiness activities were conducted over the same geographical area as his business activities and that he also "went first class" in connection with these activities. It is only reasonable to assume that it would be necessary for Mrs. Grant's attorneys to travel over a wide area in investigating Mr. Grant's nonbusiness activities, and that it would be necessary for them also to go "first class" in investigating her grounds for divorce against Mr. Grant. We have no way of knowing that Mr. Grant's frank admissions to adultery as primary grounds for divorce did not result from the work done by Mrs. Grant's attorneys. We conclude that the decree should be affirmed on both the direct and cross-appeals.

Affirmed.